PEOPLE v McNEAL

OPINION OF THE COURT

1. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE STANDARD.
   The Michigan Supreme Court has adopted the objective standard of entrapment.

2. CRIMINAL LAW—ENTRAPMENT—QUESTION OF LAW.
   Entrapment is a question of law for the trial court.

3. CRIMINAL LAW—ENTRAPMENT—EVIDENTIARY HEARINGS—JURY.
   There must be a separate evidentiary hearing, outside the presence of the jury, when the issue of entrapment is raised.

4. JURY—RIGHT TO JURY TRIAL—ENTRAPMENT—OBJECTIVE THEORY.
   A criminal defendant is not deprived of his right to a jury trial by allowing the trial court to resolve the question of entrapment, under the objective theory, because the defendant's guilt is not at issue under the objective theory of entrapment.

5. CRIMINAL LAW—ENTRAPMENT—BURDEN OF PROOF.
   A defendant has the burden of proving entrapment by a preponderance of the evidence.

6. CRIMINAL LAW—ENTRAPMENT—JURY QUESTION—MATTER OF LAW.
   Submitting the issue of entrapment to the jury was harmless error where the court ruled, as a matter of law, that no entrapment had occurred.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 143 et seq.

[2–4, 6, 13, 14] 75 Am Jur 2d, Trial § 425.

[5] 29 Am Jur 2d, Evidence § 156.

[7, 9, 15] 75 Am Jur 2d, Trial §§ 727, 906.

[8, 12, 16] 25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 46, 47.
   Entrapment to commit offense with respect to narcotics law. 33 ALR2d 883.

[10, 11] 21 Am Jur 2d, Criminal Law §§ 241, 247.

[12] 81 Am Jur 2d, Witnesses § 2.
   Court's witnesses (other than expert) in criminal prosecutions. 67 ALR2d 538.

7. Criminal Law—Entrapment—Evidentiary Hearings.

Failure to hold a separate evidentiary hearing on the issue of entrapment was not reversible error where the defendant did not seek an evidentiary hearing but requested jury instructions on entrapment; any prejudice to the defendant from taking the stand, testifying to the course of events, and admitting involvement in the charged offense, was of his own making and not reversible error.

8. Drugs and Narcotics—Delivery of Heroin—Intent—Similar Acts—Statutes.

Evidence of similar acts which materially reflects on the defendant's intent is admissible in a trial for delivery of heroin, because intent to deliver is an element of the charged crime and the prosecutor is required to prove all the elements of the charged crime beyond a reasonable doubt (MCLA 768.27; MSA 28.1050).

9. Criminal Law—Instructions to Jury—Failure to Object.

Failure to object to jury instructions precludes appellate review unless the unobjected-to error presents manifest injustice.

10. Criminal Law—Speedy Trial.

Four factors must be balanced when a speedy trial issue is raised: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.

11. Criminal Law—Speedy Trial.

A 6-1/2 month delay between a defendant's arrest and trial did not deny a defendant the right to a speedy trial where the defendant was not prejudiced by the delay.

12. Witnesses—Criminal Law—Res Gestae Witnesses—Prosecutor's Duty.

A prosecutor had no duty to produce a witness to a narcotics transaction occurring prior to the charged offense where the witness was not a res gestae witness to the crime charged.

Dissent by M. F. Cavanagh, J.

13. Criminal Law—Entrapment—Jury Question—Forced Testimony.

*Submitting the issue of entrapment to the jury is reversible error where the defendant is forced to testify in order to present his entrapment defense, even though the trial judge later finds that there is no entrapment as a matter of law.*

14. CRIMINAL LAW—ENTRAPMENT—PROCEDURE.

> *The steps which should be followed when presenting or deciding an entrapment issue are: (1) pretrial assertion of entrapment defense; (2) factual hearing on entrapment defense; the defendant should be able to testify as to police conduct without waiving his right to refuse to testify at trial; (3) trial judge ruling on entrapment, accompanied by findings of fact; and (4) assuming a ruling of no entrapment the defendant may demand a jury trial at which the state must prove all of its case; the defendant may present evidence that previously would be called "entrapment evidence" if it is material to intent or other elements of the crime.*

15. CRIMINAL LAW—EVIDENCE—SIMILAR ACTS—INSTRUCTIONS TO JURY —STATUTES.

> *A trial judge in a criminal case need not instruct the jury that evidence of similar acts may be considered only for its limited relevance to show common scheme, plan, or motive where no limiting instruction is requested (MCLA 768.27; MSA 28.1050).*

16. CRIMINAL LAW—EVIDENCE—SIMILAR ACTS—ILLEGAL DRUG SALES —PREJUDICE—PROBATIVE VALUE.

> *Evidence of other criminal transactions should not be admitted in a prosecution for the illegal sale of drugs where the prejudicial impact of the evidence far outweighs its minimal, cumulative probative value.*

Appeal from Oakland, Robert B. Webster, J. Submitted June 7, 1976, at Lansing. (Docket No. 23300.) Decided December 2, 1976.

Truman McNeal was convicted of delivery of heroin. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *David A. Potts,* Assistant Appellate Counsel, for the people.

*Thomas Raguso & Associates* (by *Larry Barnett),* for defendant.

Before: Bashara, P. J., and M. F. Cavanagh and D. T. Anderson,* JJ.

Bashara, P. J. The appellant was convicted of delivery of heroin. MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a). He appeals.

At the close of proofs the trial judge ruled there was no entrapment as a matter of law. He then submitted the issue of entrapment to the jury, on the assumption that to refuse would deprive the appellant of his right to a jury trial.

The first issue raised by appellant is whether the trial judge gave an erroneous instruction on the objective standard of entrapment. However, we perceive the primary issue to be whether the court erred in submitting the question of entrapment to the jury.

In *People v Turner,* 390 Mich 7, 19–21; 210 NW2d 336 (1973), the Michigan Supreme Court relied upon the dissenting opinion of Justice Stewart in *United States v Russell,* 411 US 423, 439–450; 93 S Ct 1637; 36 L Ed 2d 366 (1973), and adopted the objective standard of entrapment. In *People v Habel (On Rehearing),* 53 Mich App 399, 400–401; 220 NW2d 74 (1974), a panel of this Court concluded *Turner's* reliance on Justice Stewart's dissent in *Russell* evidenced an intention by the Michigan Supreme Court to adopt Justice Stewart's view that entrapment is a question of law for the court.

Justice Stewart's dissent in *Russell* was primarily supported by Justice Roberts' concurring opinion in *Sorrells v United States,* 287 US 435, 453–459; 53 S Ct 210; 77 L Ed 413 (1932), and Justice Frankfurter's dissent in *Sherman v United States,* 356 US 369, 378–385; 78 S Ct 819; 2 L Ed 2d 848

---

* Circuit judge, sitting on the Court of Appeals by assignment.

(1958). Justice Roberts' concurring opinion explains the rationale behind the objective theory of entrapment:

"This * * * [the objective theory of entrapment] calls for no distinction between crimes mala in se and statutory offenses of lesser gravity; requires no statutory construction, and attributes no merit to a guilty defendant; *but frankly recognizes the true foundation of the doctrine in the public policy which protects the purity of government and its processes.* Always the courts refuse their aid in civil cases to the perpetration and consummation of an illegal scheme. Invariably they hold a civil action must be abated if its basis is violation of the decencies of life, disregard of the rules, statutory or common law, which formulate the ethics of men's relations to each other. Neither courts of equity nor those administering legal remedies tolerate the use of their process to consummate a wrong. The doctrine of entrapment in criminal law is the analogue of the same rule applied in civil proceedings. And this is the real basis of the decisions approving the defense of entrapment, though in statement the rule is cloaked under a declaration that the government is estopped or the defendant has not been proved guilty." (Footnote omitted.) (Emphasis supplied.) *Sorrells v United States, supra,* 287 US 455.

Succinctly, the courts should refuse to participate as instrumentalities in the administration of the criminal justice system to convict an entrapped defendant, where the methods employed by the government cannot be countenanced. *Sherman v United States, supra,* 356 US 380.

If one conceives the rationale behind the objective theory of entrapment, it is easy to understand why entrapment is a question of law for the court. Justice Roberts explains as follows:

"The protection of its own functions and the preser-

vation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law. * * * Proof of entrapment, at any stage of the case, requires the court to stop the prosecution, direct that the indictment be quashed, and the defendant set at liberty. If in doubt as to the facts it *may* submit the issue of entrapment to a jury for advice. But whatever may be the finding upon such submission the power and the duty to act remain with the court and not with the jury." (Footnote omitted.) (Emphasis supplied.) *Sorrells v United States, supra,* 287 US 457.

Justice Roberts left no doubt that the primary responsibility lies with the court to censure outrageous and reprehensible government conduct. However, he then suggests that if the trial court is in doubt as to the facts, it may—but is not required to—submit the issue of entrapment to the jury for advice.

Justice Roberts' proposed procedural device is not entirely clear. It could be that he is suggesting that the jury make special findings of fact to which the trial judge would apply the law. In the alternative, he may be suggesting that the jury should initially decide the issue of entrapment, allowing the court to attach whatever weight it desires to the jury finding in making an ultimate decision.

In any event those subsequent separate opinions of the United States Supreme Court that have adhered to Justice Roberts' objective standard of entrapment have found that the issue of entrapment is *solely* a question of law for the court. *Hampton v United States,* 425 US 484; 96 S Ct 1646; 48 L Ed 2d 113 (1976) (BRENNAN, J., dissenting), *United States v Russell, supra,* 411 US 441; *Sherman v United States, supra,* 356 US 385. We

adopted this view in *People v Habel (On Rehearing), supra.*

Moreover, the procedures set forth in *People v Stanley,* 68 Mich App 559; 243 NW2d 684 (1976), and *People v Sheline,* 64 Mich App 193, 199–200, n 5; 235 NW2d 177 (1975), *lv granted,* 395 Mich 817 (1975), compel such a result. *Stanley* and *Sheline* require a separate evidentiary hearing, outside of the presence of the jury, on the issue of entrapment. Were the trial judge to submit the issue of entrapment to the jury for advice during the evidentiary hearing, a second untainted jury would have to be impaneled to hear the remaining merits of the case.

Another consideration exists for characterizing entrapment as a question of law. Juries tend to look upon entrapment as a defense of technicality. Often, the only way a defendant can raise the defense is by taking the witness stand. In the course of testifying he almost always expressly or impliedly implicates himself in the commission of some crime. Even where the police conduct is outrageous, a jury may choose to convict in light of the defendant's admissions.

Finally, permitting the trial judge to resolve the issue allows for the accumulation of precedents, which establish standards and lead to guidance and consistency in the application of entrapment principals. Although a jury verdict settles the issue of entrapment in a particular case, it does not give significant guidance for official conduct in the future. *Sherman v United States, supra,* 356 US 385.

Nor does requiring the trial judge to resolve the question of entrapment deprive the defendant of his right to a trial by jury. Entrapment under the objective theory should not be considered as a

defense belonging to the defendant. It is totally unconcerned with the guilt or innocence of the defendant. The following excerpt from Justice Roberts' opinion in *Sorrells* is instructive:

"Recognition of the defense of entrapment as belonging to the defendant and as raising an issue for decision by the jury called to try him upon plea of the general issue, results in the trial of a false issue wholly outside the true rule which should be applied by the courts." *Sorrells v United States, supra,* 287 US 458.

Since guilt is not at issue under the objective theory, allowing the trial court to resolve the question of entrapment does not deprive the criminal defendant of his right to a jury trial.

Judge MAHER recognized this very concept in his well-reasoned opinion of *People v Stanley, supra.* In *Stanley* the burden of proof was placed on the defendant to establish entrapment by a preponderance of the evidence. Placing the burden on the defendant in a criminal case can only be justified if one apprehends that the issue presented by entrapment is the government conduct and not the defendant's guilt.

In the case at bar, the appellant was not entitled to have the jury charged on the entrapment issue. The resulting error was harmless. It inured to the benefit of the defendant since it permitted the jury to render a decision on the issue ruled upon by the court, which should have been dispositive. *People v Cancino,* 70 Mich App 90; 245 NW2d 414 (1976).

We are well aware that *People v Sheline, supra,* 199–200, n 5, found prejudice to the defendant where a separate evidentiary hearing was not held. The defendant took the stand in the presence of the jury, and in testifying to the course of events, admitted his involvement in the charged

offense. The *Sheline* panel concluded that they could not be certain the defendant would have waived his privilege against self-incrimination by taking the stand in the presence of the jury, had a proper evidentiary hearing been held.

In the instant case the appellant sought no evidentiary hearing. He requested jury instructions on entrapment. It is quite evident that appellant sought to take the issue of entrapment to the jury. The only way the appellant could present this theory to the jury was by taking the stand. Under these circumstances, any prejudice to the appellant was of his own making and was not reversible error.

Although instructional content is no longer an issue under the objective theory of entrapment, *People v Cushman,* 65 Mich App 161, 166; 237 NW2d 228 (1975), appellant argues the instruction given indicates that the trial court applied the subjective standard of entrapment. The instruction given was quite similar to the instruction critized in *People v Sheline, supra,* 197, n 2. We disagree with the *Sheline* panel that such an instruction introduces the issue of predisposition. The instruction applied an objective standard and was taken from Justice Frankfurter's dissent in *Sherman v United States, supra,* 356 US 383–384, and Justice Stewart's dissent in *United States v Russell, supra,* 411 US 445. Moreover, the trial judge's ruling and finding of facts disclose that he applied an objective standard of entrapment.

Appellant next argues that the trial judge committed reversible error by allowing introduction of evidence concerning alleged similar acts pursuant to MCLA 768.27; MSA 28.1050. The appellant insists intent was not a material issue. We disagree. If a proper evidentiary hearing had been

held with the trial judge ruling adversely to appellant, the prosecutor still would have been required to prove all the elements of the charged crime beyond a reasonable doubt. Intent to deliver is an element of the crime of delivery of heroin. MCLA 335.341(1); MSA 18.1070(41)(1). The evidence of similar drug transactions materially reflected on appellant's intent. *People v Anderson,* 13 Mich App 247, 250; 163 NW2d 793 (1968), *People v Peck,* 39 Mich App 150, 154–155; 197 NW2d 346 (1972), see 2 Wigmore, Evidence (3d ed), § 307. To that extent it was proper for the jury to consider evidence of other crimes.

Of course if the appellant had sought an evidentiary hearing on the issue of entrapment, the element of intent would not have been material under the objective standard. However, a review of the record discloses that the trial judge disregarded evidence of predisposition, and applied an objective standard in ruling on the issue of entrapment.

Appellant attacks certain instructions of the trial judge pertaining to the burden of proof and the weight and credibility to be attached to the testimony of police officers. The failure to object generally precludes appellate review unless the unobjected-to error presents manifest injustice. We find none. See *People v Carroll,* 396 Mich 408, 415–416; 240 NW2d 722 (1976), *People v Shoemaker,* 131 Mich 107, 108; 90 NW 1035 (1902).

Appellant next insists the delay in arrest resulted in prejudice to him by the failure of key witnesses to remember certain events surrounding the charged offense. *People v Rhymes,* 62 Mich App 27, 29; 233 NW2d 171 (1975), has recognized that this Court has adopted two diametrically opposed views on this issue. However, under either

theory the appellant's argument fails. Pursuant to *People v Noble,* 18 Mich App 300; 170 NW2d 916 (1969), appellant has no constitutional right to be arrested. In the alternative, were we to apply the three-pronged test of *People v Hernandez,* 15 Mich App 141; 170 NW2d 851 (1968), the appellant has failed to show undue prejudice. The trial judge found no actual prejudice to the appellant, and a review of the record sustains those findings. *People v Rhymes, supra,* 30.

Appellant contends that he was denied his right to a speedy trial. Analysis of the speedy trial issue requires us to balance four factors. They are the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), *People v Collins,* 388 Mich 680; 202 NW2d 769 (1972).

It appears that the appellant was tried some 6-1/2 months after he was first arrested. Since a 6-1/2 month period is not so inherently prejudicial by itself as to require dismissal, the controlling element is the prejudice to the defendant caused by this delay. *People v Hall,* 391 Mich 175, 184; 215 NW2d 166 (1974). Our review of the record shows no actual prejudice to the appellant. We conclude appellant was not denied his right to a speedy trial.

The final issue raised by appellant is whether the appellee's failure to produce a witness to a narcotics transaction occurring prior to the charged offense constitutes reversible error. The witness was not a res gestae witness. Accordingly, the prosecutor had no duty to produce the witness. There was no error.

Affirmed.

D. T. ANDERSON, J., concurred.

M. F. Cavanagh, J. *(dissenting)*. I dissent for the reason that I cannot agree that the trial court's finding of no entrapment as a matter of law cured the error of submission of the issue to the jury. The procedure in this case—ruling on entrapment *after* the defendant presented all of his case to the jury—forced the defendant to testify in order to present his entrapment defense. *People v Sheline,* 64 Mich App 193; 235 NW2d 177 (1975), *lv granted,* 395 Mich 817 (1975), held that this compelled self-incrimination was sufficient prejudice to require reversal.

The procedure outlined in *People v Stanley,* 68 Mich App 559; 243 NW2d 684 (1976), and in the dissenting opinion of Judge T. M. Burns in *People v Cancino,* 70 Mich App 90, 98; 245 NW2d 414, 418 (1976), would seem to me to be the only proper one. Its steps would be:

*a. Pretrial assertion of entrapment defense.*

*b. Factual hearing on entrapment defense. The defendant should be able to testify as to police conduct without waiving his right to refuse to testify at trial.*

*c. Trial judge ruling on entrapment, accompanied by findings of fact.*

*d. Assuming a ruling of no entrapment, the defendant may demand a jury trial at which the state must prove all of its case. The defendant may present evidence that previously would be called "entrapment evidence" if material to intent or other elements of the crime.*

I concur with the holding of the majority that under prevailing Michigan law, the trial court's admission of evidence of prior and subsequent sales of heroin was not in error. Furthermore, unless a limiting instruction is requested, the trial court need not instruct the jury to consider the

evidence for its limited relevance to show common scheme, plan, or motive. *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971), *People v Nawrocki,* 376 Mich 252; 136 NW2d 922 (1965). *People v Kelly, supra,* also commented favorably upon *People v Anderson,* 13 Mich App 247; 163 NW2d 793 (1968), which held that evidence of other illegal drug sales is admissible under MCLA 768.27; MSA 28.1050 to show a "scheme, plan or system on the part of the defendant". See also, *People v Koehler,* 54 Mich App 624, 634; 221 NW2d 398, 403 (1974), *People v Peck,* 39 Mich App 150, 155; 197 NW2d 346, 349 (1972), *People v Jones,* 38 Mich App 512; 196 NW2d 817 (1972), *lv den,* 388 Mich 792 (1972), *People v White,* 27 Mich App 432, 434; 183 NW2d 606, 607 (1970).

I find it regrettable that this Court has blindly followed the precedent of *Anderson* and has effectively destroyed the rule precluding evidence of other criminal transactions, at least in cases involving drug sales. I would not interpret the exception in MCLA 768.27; MSA 28.1050 so broadly. A more restrictive and preferable construction of "materiality" under this statute can be found in *People v Spillman,* 63 Mich App 256; 234 NW2d 475 (1975). Here, as there, the probative value of the evidence should have been weighed against its prejudicial impact. There was ample evidence to show the elements of this crime and the prejudicial impact of the evidence of similar transactions far outweighed its minimal, cumulative probative value.

For the reasons stated, I would reverse and remand.